**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

| | |
|---|---|
| JOHNNY PARSONS, <br> ADC #151667, <br> <br> Plaintiff, <br> v. <br> <br> CHRIS HORAN, Provider, Medical Doctor, <br> Tucker Infirmary, ADC, *et al.* <br> <br> Defendants. | No. 5:19-cv-00246-JJV |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Johnny Parsons ("Plaintiff") is a prisoner in the Tucker Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants Dr. Chris Horan, Health Services Administrator Carol A. Chisom, Director of Nursing Melissa Moore, and APRN Uchenna Onyia-Murphy failed to provide him with constitutionally adequate medical care for urological and mobility problems that require him to use a catheter, wheelchair, and walker. (Doc. No. 6.)

Specifically, Plaintiff claims that, on February 2 or 3, 2019, Defendant Moore canceled a script authorizing him to use catheters four times a day, as ordered by a private urologist. (*Id.* at 4.) Sometime before February 5, 2019, Plaintiff reported the matter to Dr. Horan, who allegedly instructed him to "go through the sick call process." (*Id.*) Plaintiff says that, sometime later, Dr. Horan refused to "re-issue the catheters" and "took away" his pain medications, wheelchair, and walker. (*Id.*) In May 2019, Defendant Murphy allegedly refused to order catheters as recommended by the private urologist during a follow-up exam. (*Id.*) And, during an unspecified time period, Defendant Chism "rejected" Plaintiff's medical grievances and discussed his medical

records with non-medical prison staff. (*Id.*)

Defendant Moore concedes Plaintiff has properly exhausted his administrative remedies against her regarding the February 2 or 3, 2019 cancelation of his catheter script. (Docs. Nos. 28, 29.) In contrast, the other Defendants have filed a Motion for Partial Summary Judgment arguing the claims against them should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies. (Docs. Nos. 28, 29, 30.)

On December 11, 2019, I entered a Partial Recommended Disposition suggesting the Motion be granted in part and denied in part. (Doc. No. 34.) While it was pending before the District Judge, the parties consented to my jurisdiction over this case. (Doc. Nos. 36.) Thus, the Partial Recommended Disposition is withdrawn and replaced with this Memorandum and Order. And, I will treat Plaintiff's Objections (Doc. No. 37) to the Partial Recommended Disposition as his Response to the Motion for Summary Judgment. After carefully reviewing the pleadings and for the following reasons, Defendants' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*,

497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.  ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means

using all steps that the agency holds out and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

The grievance policy of the ADC in effect at the time of the alleged constitutional violations was Administrative Directive 14-16, and Plaintiff's allegations are governed by that Directive. (Doc. No. 30-1.) Pursuant to the Directive, an inmate is required to attempt informal resolution of a problem or complaint prior to filing a formal grievance. (*Id.*) This is accomplished by completing and submitting the Unit Level Grievance Form within fifteen days after the occurrence of the incident. (*Id.*) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at 5-6.) Following an attempt at informal resolution, an inmate may proceed by filing a formal grievance within three working days of receiving a response to the informal resolution. (*Id.* at 8.) The Health Services Administrator must provide a written response within twenty working days of receiving the formal grievance. (*Id.* at 9-10.) An inmate who is dissatisfied with the response, or who does not receive a response within the allotted time, may appeal within five working days to the Deputy Director for Health and Correctional Programs. (*Id.* at 10-12.) The Deputy Director for Health and Correctional Programs must provide a written response within thirty working days. (*Id.* at 12.) "A written decision or rejection of an appeal at this level is the end of the grievance process." (*Id.*) Importantly, Administrative Directive 14-16 includes the following warning:

> Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC. Inmates must fully exhaust the grievance prior to filing a lawsuit. Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

(*Id*. at 4-5.)

In a sworn Declaration, the ADC Medical Grievance Supervisor says TU-19-154 is the only fully exhausted and relevant grievance Plaintiff filed before commencing this lawsuit on August 1, 2019.  (Doc. Nos. 30-1; 30-2.)  There is no contrary evidence in the record.[1]  And, Plaintiff does not allege or establish administrative remedies were unavailable to him.

In grievance TU-19-154, Plaintiff said he was unable to drain his bladder because "CCS medical services discontinued" his script authorizing him to use four catheters a day, as prescribed by a urologist.  (Doc. Nos. 30-1 at 23.)  Plaintiff did not name any specific individuals or mention a lack of pain medication, wheelchair, or walker.  (*Id*.)  In the final administrative ruling on this grievance, the ADC Chief Deputy said, in relevant part:

> A review of your electronic medical records indicates the recommendation for self-catherization every six hours was implemented on January 23, 2019.  The order was discontinued on February 2, 2019, due to you being caught filling the urinal with water after catheterizing yourself. The *nurse* noted in the treatment call encounter that she had informed you to let her see the urinal before you emptied it and you were seen running water into the urinal after catheterizing.  *Dr. Horan* saw you on February 11, 2019 and noted no signs or symptoms of bladder retention.
>
> This appeal is without merit.

---

[1] Plaintiff has previously filed numerous grievances in the record.  (Doc. Nos. 3, 4, 7, 9, 12, 13.)  But, they are not proper exhaustion because: (1) they deal with medical issues not raised in the Amended Complaint; (2) Plaintiff did not appeal them through the final stage of the ADC grievance procedure; and/or (3) the final administrative ruling was made *after* Plaintiff filed this lawsuit.  *See Woodford*, 548 U.S. at 90 (administrative exhaustion "means using all steps that the agency holds out and doing so properly so that the agency addresses the issues on the merits"); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (a prisoner must pursue "the prison grievance process to its final stage"); *Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir. 2003) ("Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . .  If exhaustion was not completed at the time of filing, dismissal is mandatory") (emphasis in the original).

(*Id.* at 25) (emphasis added).

As previously mentioned, Defendant Moore concedes she is the nurse mentioned in grievance TU-19-154 and that Plaintiff has properly exhausted his claim against her. (Doc. Nos. 29 at 10; No. 30-2.)

In contrast, Defendants Onyia-Murphy and Chisom argue they are entitled to dismissal because Plaintiff did not name them in TU-19-154 or mention any of the claims raised against them in the Amended Complaint. Plaintiff says his reference in TU-19-154 to "CCS medical services" was sufficient to identify Defendants Onyia-Murphy and Chisom. (Doc. No. 37.) I disagree. That vague reference did not provide enough information for ADC grievance personnel to identify Defendants Onyia-Murphy and Chisom among the many CCS employees working at the Tucker Unit. Also, in TU-19-154, Plaintiff was grieving his failure to receive catheters from January 23 to February 4, 2019, which is a different claim from what he is attempting to raise against Defendants Onyia-Murphy and Chisom in this lawsuit, *i.e.,* the rejection of his medical grievances, the discussion of his medical records with non-medical staff, and the May 2019 refusal to order catheters. (Doc. No. 30-1 at 23.) Thus, Plaintiff's claims against Defendants Onyia-Murphy and Chisom are dismissed without prejudice due to a lack of exhaustion. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (a prisoner must fully exhaust his available administrative remedies as to each claim raised against each defendant before filing a complaint in federal court); *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014) (same).

Defendant Horan argues he is entitled to dismissal because all of the claims raised in the Amended Complaint occurred *after* February 11, 2019, which is the last date of medical care

discussed in TU-19-154. (Doc. 29 at 10-11). I disagree. Construing the Amended Complaint liberally, it appears Plaintiff is alleging that, in early February 2019, Dr. Horan refused to provide him with catheters and failed to provide him with adequate care for his bladder problems. *See Sandknop v. Mo. Dept. of Corrs.*, 932 F.3d 739, 741 (8th Cir. 2019) (*pro se* complaints must be liberally construed). Although Plaintiff did not mention Dr. Horan in his original grievance, the ADC Chief Deputy reached the merits of those allegations when ruling on the final appeal of TU-19-154. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits"). Thus, I conclude Plaintiff has properly exhausted his claim that, from February 2 to 11, 2019, Dr. Horan failed to provide him with adequate medical care for bladder issues. And, he may proceed with that claim.

However, the allegations in the Amended Complaint regarding Dr. Horan's alleged discontinuation of pain medications, a wheelchair, and a walker were not mentioned in TU-19-154 or addressed by ADC when resolving that grievance. Similarly, Plaintiff did not raise, and the ADC did not address, any medical care Dr. Horan provided to Plaintiff after February 11, 2019. Consequently, I conclude Plaintiff has not properly exhausted his administrative remedies regarding these claims against Dr. Horan, and they are dismissed without prejudice. *See Kozohorsky v. Harmon*, 332 F.3d 1141, 1143 (8th Cir. 2003) ("When multiple prison condition claims have been joined . . . the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to *all* of the claims") (emphasis in the original).

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

7

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson,* 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

### IV.   CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1.   Defendants' Motion for Partial Summary Judgment (Doc. No. 28) is GRANTED in part and DENIED in part.

2.   Plaintiff may proceed with his claim that, from February 2 to 11, 2019, Defendants Moore and Horan failed to provide him with adequate medical care for bladder problems, and all other claims are DISMISSED without prejudice.

3.   Defendants Chisom and Onyia-Murphy are DISMISSED without prejudice as parties to this action.

4.   I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order would not be taken in good faith.

DATED this 7th day of January 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE