**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

| | | |
|---|---|---|
| JOHNNY PARSONS, ADC #151667 | * * * | |
| Plaintiff, | * | |
| v. | * | No. 5:19-cv-00246-JJV |
| | * | |
| CHRIS HORAN, Provider, Medical Doctor, Tucker Infirmary, ADC, *et al.* | * * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Johnny Parsons ("Plaintiff") is a prisoner in the Tucker Unit of the Arkansas Division of Correction ("ADC"). He has filed this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging that from February 2 to 11, 2019, Defendants Dr. Chris Horan and Director of Nursing Melissa Moore failed to provide him with constitutionally adequate medical care for urinary retention. (Doc. No. 6.) All other claims raised in the Amended Complaint have been previously dismissed without prejudice. (Doc. No. 40.)

Defendants Horan and Moore have filed a Motion for Summary Judgment arguing they are entitled to judgment as a matter of law. (Doc. Nos. 41, 42, 43.) Plaintiff has not responded, and the time to do so has expired. For the following reasons, the Motion is GRANTED, and Plaintiff's inadequate medical care claim against Defendants Horan and Moore is DISMISSED with prejudice.

**II.   SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.   FACTS

The facts viewed most favorably to Plaintiff and taken for his medical records (Doc. No. 41-1; No. 41-2), his deposition (Doc. No. 45), and Defendants' declarations (Doc. No. 41-3; No. 41-4) are as follows. Plaintiff is thirty-seven years old. Prior to his incarceration, in 2009, Plaintiff was in a serious accident while driving a tractor trailer. (Doc. No. 45 at 12-14.) Plaintiff broke both of his legs, injured two vertebrae in his lower back, and damaged his sciatic nerve. (*Id.*)

When Plaintiff arrived at the ADC in 2017, he was given a wheelchair to use due to chronic lower back pain. (Doc. No. 45-1.) The parties dispute the degree to which Plaintiff can walk unassisted. (Doc. No. 43-1; No. 43-2 at 1-2; No. 43-4; No. 45 at 13-17.) It is undisputed Plaintiff

can stand, has normal strength and sensation in his legs, and he is currently using a walker. (*Id.*)

Plaintiff says that sometime in early January 2019, he started having problems with urine retention after his back "locked up" while rolling over in bed. (Doc. No. 43-1 at 1-7; No. 43-4; No. 45 at 17-19, 23.) On June 9, 2019, Defendant Horan ordered an in and out catheter and then a Foley catheter to help Plaintiff void his bladder. (*Id.*) After treating Plaintiff for a urinary tract infection, Defendant Horan referred him to a urologist at the University of Arkansas for Medical Sciences ("UAMS"). (*Id.*)

On January 22, 2019, Plaintiff told the UAMS urologist that he was paraplegic, which the parties agree is *not* accurate, and that he was having urinary retention. (Doc. No. 43-1 at 1-6; No. 43-4; No. 43-5; No. 45 at 13.) The urologist did a urinalysis and blood work, which were normal, and he noted Plaintiff's abdomen was soft and without pain. (*Id.*) The urologist did not perform an ultrasound, CT scan, cystoscopy, or any other diagnostic testing. (*Id.*) Based on Plaintiff's subjective complaints of urinary retention and his inaccurate claim of being a paraplegic, the UAMS urologist diagnosed Plaintiff with neurogenic bladder and recommended he be allowed to use in and out catheters four times a day. *(Id.)* Consistent with those instructions, the ADC issued a script authorizing Plaintiff to come to the Tucker Unit infirmary four times a day to use a catheter. (Doc. No. 43-1 at 11-12; No. 43-4.) Plaintiff was instructed to empty his bladder into a hand-held urinal and show the medical staff the amount of extracted urine before disposal so they could keep track of his output. (*Id.*) And, he was prohibited from taking any of the catheters out of the infirmary. (*Id.*) Plaintiff admitted during his deposition that he understood those instructions and followed them. (Doc. No. 45 at 17-18.)

On February 2, 2019, Defendant Moore gave Plaintiff a catheter and repeated the instructions to give her the urinal when he was finished emptying his bladder so that she could

measure the output. (Doc. No. 43-1 at 7; No. 43-3; No. 45 at 27-28.) Plaintiff said he understood the instructions. (*Id.*) He then stepped behind a screen separating the toilet from Nurse Moore and used a catheter to empty his bladder into a hand-held urinal. (*Id.*) Against Defendant Moore's instructions, Plaintiff stepped out from behind the screen and put the urinal under the tap in the sink. (*Id.*) Plaintiff says he had emptied the urinal in the toilet and that he was trying to rinse it out in the sink. (Doc. No. 45 at 27-28.) In contrast, Defendant Moore says there was a "small amount of urine" in the urinal and that Plaintiff was adding water to it to make it appear that he had a larger urine output. (Doc. No. 43-4.) Defendant Moore directed Plaintiff to stop, and she reported her observations to Defendant Horan. (*Id.*) Based on Defendant Moore's description and the fact that there was no diagnostic testing to confirm the neurologic bladder diagnosis, Defendant Moore concluded, in his professional medical opinion, that Plaintiff was "faking his urinary retention," "urinating on his own without a catheter," and "adding water to the urinal to suggest he had a return" while using the catheter in the infirmary. (Doc. No. 43-4 at 2.) For these reasons, Defendant Horan discontinued Plaintiff's catheter script. (*Id.*) When Plaintiff learned, on the following day that the script had been discontinued, he became irate and verbally abusive in the infirmary. (Doc. No. 43-1 at 8; No. 45 at 31.)

On Friday, February 8, 2019, Plaintiff filed a sick call request stating that he had not urinated in the last four days. (Doc. No. 43-1 at 9.) But, during his deposition, Plaintiff admitted that was incorrect, and he said he was using a catheter he had hidden in his barrack to relieve himself. (Doc. No. 45 at 18-20, 25-6, 29-30.)

The following Monday, on February 11, 2019, Plaintiff saw Defendant Horan in the infirmary. (Doc. No. 43-1 at 10; No. 43-4.) Despite Plaintiff's allegations that he had not urinated in many days, Defendant Horan noted that Plaintiff's abdomen was soft, non-tender, and non-

4

distended. (*Id.*)  Additionally, Plaintiff was not uncomfortable, sweating, or exhibiting any other clinical symptoms of urinary retention.  (*Id.*)  When Defendant Horan explained his findings, Plaintiff said he had been relieving himself with a catheter hidden in his barracks.  (Doc. No. 45 at 18-19, 25-26, 29-30.)  According to Plaintiff, Defendant Horan ordered guards to search his barracks, but they could not find his hidden catheter.  (*Id.*)  Defendant Horan concluded Plaintiff had "psychiatric problems, possibly Munchausen syndrome or some other secondary cause" that was causing him to fake urinary retention, and he refused to renew the script authorizing Plaintiff to use catheters.  (Doc. No. 43-1 at 10; No. 43-4.)  For the remainder of February and March 2019, Plaintiff's BUN and creatinine levels remained normal, and he did not have abdominal pain, distention, or any other objective signs of urinary retention.  (Doc. No. 43-4.)

## IV.   ANALYSIS

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care." *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).  Plaintiff claims Defendants violated this constitutional right by canceling his catheter script on February 2 and 11, 2019. To proceed to trial on that claim, Plaintiff must have evidence that: (1) he had an objectively serious need for catheters; and (2) Defendants Moore and Horan subjectively knew of, but deliberately disregarded, that serious medical need.  *See Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018); *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016).

Based on the evidence before me, there is a genuine issue of material fact as to whether Plaintiff had an objectively serious medical need to use catheters to urinate in February 2019.[1]

---

[1] During his January 23, 2020 deposition, Plaintiff said the UAMS urologist had recently renewed his recommendation that Plaintiff receive four catheters a day, but ADC officials were refusing to do so.  (Doc. No. 45 at 19.)

5

Nevertheless, I conclude Defendants are entitled to summary judgment because Plaintiff has failed to produce any evidence to support the second element, which is deliberate indifference. The Eighth Circuit has explained that deliberate indifference is a high threshold that goes well beyond negligence or gross negligence. *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). It "requires proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998). The evidence here does not meet that threshold for either Defendant.

First, it is undisputed Defendant Moore did not authorize or cancel Plaintiff's prescription to use catheters. And, the parties agree her only role in this case was that she reported to Defendant Horan what she saw Plaintiff doing while using the catheter in the infirmary on February 2, 2019. (Doc. No. 43-3.) Nothing in the record suggests she did so recklessly, callously, or otherwise with deliberate indifference. And, Plaintiff admitted during his deposition that he disobeyed Defendant Moore's instructions to let her record his urine output before he emptied the urinal. *See Beck v. Skon*, 253 F.3d 330, 333-34 (8th Cir. 2001) (affirming summary judgment when a prisoner failed to comply with the prescribed treatment); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) (finding no deliberate indifference when the doctors' efforts to treat a prisoner "were impeded by [the prisoner's] apparent inability or refusal to follow their instructions"). Because there is no evidence from which a jury could find that Defendant Moore acted with deliberate indifference, I conclude she is entitled to summary judgment.

As to Defendant Horan, the parties agree he promptly responded to Plaintiff's early January 2019 complaint of urinary retention by giving him two different types of catheters, treating him for a urinary tract infection, referring him to a private specialist, and initially carrying out the

urologist's recommendation by authorizing Plaintiff to use catheters four times a day in the infirmary. *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"); *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994) (finding no deliberate indifference when medical personnel provided a prisoner with "an escalating level of treatment for [his] aliments over time").

The parties dispute whether Plaintiff actually needed a catheter to empty his bladder. But, the question before me is a narrow one of subjective intent. I must decide whether Defendant Horan acted with deliberate indifference when he canceled Plaintiff's catheter script on February 2, 2019 and refused to renew it on February 11, 2019. As previously discussed, the UAMS urologist made his recommendation based on Plaintiff's subjective reports of symptoms and his now *admittedly false claim* of being a paraplegic. There was no testing or objective medical evidence to support his finding that Plaintiff had a neurological bladder and could only empty his bladder with catheters. Likewise, Defendant Horan could find no objective medical evidence, based on his physical examination and testing of Plaintiff, to support the *now admittedly false accusation in* Plaintiff's February 7, 2019 sick call request that he had not urinated in several days because his catheter script had been canceled. And, importantly, prison guards could not locate the catheter Plaintiff said he had hidden in his barracks. Based on the information before him at that time, Defendant Horan concluded, in his professional medical opinion that Plaintiff was faking urinary retention and did not need to use catheters to empty his bladder. Nothing in the record suggests he acted with deliberate indifference when he reached that conclusion. *See Barr,* 909 F.3d at 921–22 ("doctors remain free to exercise their independent medical judgment" and a prisoner's "mere difference of opinion over matters of expert medical judgment or a course of

7

medical treatment fails to rise to the level of a constitutional"); *White v. Farrier,* 849 F.2d 322, 327 (8th Cir. 1988) (a disagreement between doctors as to the appropriate course of care does not establish deliberate indifference).

Importantly, Dr. Jeffrey Stieve, who is the Regional Director of Wellpath, says in his sworn declaration that Defendant Horan "properly exercised his medical judgment" and acted appropriately when he canceled Plaintiff's catheter script on February 2 and 11, 2019. (Doc. No. 43-5 at 2.) Plaintiff has not offered any contrary evidence. *See Dulany,* 132 F.3d at 1240 ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"). And, in light of Plaintiff's admission that he had a catheter hidden in his barrack, it appears that he was not harmed by Defendant Horan's decision to discontinue the script authorizing him to use a catheter in the infirmary. *Mitchell v. Dakota Cty. Social Servs.,* 959 F.3d 887, 896 (8th Cir. 2020) (a plaintiff must show he suffered "an injury in fact traceable to the defendant's conduct"). Because there is no evidence from which a jury could find that Defendant Horan acted with deliberate indifference, I conclude he is also entitled to summary judgment,

That being said, I am not unsympathetic to Plaintiff's medical condition and the physical complications he has endured since his accident. But, the bar for proceeding with a constitutionally inadequate medical care claim, under 42 U.S.C. § 1983, is high. And, nothing in the record, which I have thoroughly reviewed, suggests Defendant Moore or Horan acted with deliberate indifference when they treated Plaintiff in February 2019. Finally, I read in Plaintiff's deposition that he will complete his sentence and be released right before Thanksgiving 2020, and I wish him the best of luck as he returns to life outside of prison.

## V.    CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. No. 41) is GRANTED, Plaintiff's inadequate medical care claim against Defendants Horan and Moore is DISMISSED with prejudice, and this case is CLOSED.

2. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order, as well as the accompanying Judgment would not be taken in good faith.

DATED this 22nd day of June 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE